ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL IV

| | | |
|---|---|---|
| **OSCAR RÍOS RIVERA**<br><br>Apelante<br><br>v.<br><br>**EDWIN MULERO; BAYAMÓN MEDICAL CENTER CORP.; ST. JAMES SECURITY SERVICES, LLC.; COMPAÑÍA DE SEGURIDAD A; ASEGURADORAS X, Y, Z; FULANO DE TAL; SUTANA DE TAL**<br><br>Apelado | KLAN202400381 | **APELACIÓN** procedente del Tribunal de Primera Instancia, Sala Superior de **Bayamón**<br><br>Civil Núm.: BY2022CV06256<br><br>Sobre: Daños y Perjuicios |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Jueza Rivera Marchand y el Juez Rodríguez Flores.

Cintrón Cintrón, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 22 de julio de 2024.

Comparece ante este Foro, el señor Oscar Ríos Rivera (señor Ríos Rivera o apelante) y solicita que revisemos la *Sentencia Parcial* emitida el 14 de marzo de 2024, por el Tribunal de Primera Instancia (TPI), Sala Superior de Bayamón. Mediante dicho dictamen, el TPI desestimó con perjuicio la *Demanda* por daños y perjuicios presentada contra Bayamón Medical Center, Corp. (BMC o apelado), por estar cobijados por la inmunidad patronal conferida bajo la póliza de la Corporación del Fondo del Seguro del Estado (CFSE).

Por los fundamentos que expondremos a continuación, se confirma la *Sentencia Parcial* apelada.

**I.**

Surge del expediente que el 8 de diciembre de 2022, el señor Ríos Rivera presentó una *Demanda* por daños y perjuicios en contra del señor Edwin Mulero, BMC y St. James Security Services por

hechos ocurridos el 18 de abril de 2022.[1] En la demanda, el señor Ríos Rivera alegó que el día de los hechos se encontraba desempeñando labores de mantenimiento, cambiando una botella vacía de cinco galones de agua por una nueva en un dispensador de agua y que, en el proceso, derramó un poco de agua en el piso, lo cual le molestó al señor Mulero. Arguyó que, a eso de las 10:00 am se dirigió a tomar el elevador en el cual se encontraba solo el señor Mulero y este último, sin razón, procedió a agredirlo, golpeándolo en la parte de atrás de la cabeza. Añadió que, al abrir las puertas del elevador, el señor Mulero continuó agrediéndolo en el pasillo del hospital en el que se encontraban, en el cual una compañera de trabajo logró detenerlos. Además, expuso que fue llevado a la sala de emergencias donde le brindaron primeros auxilios al curar las heridas en su rostro y al ajustar su hombro izquierdo, el cual estaba fuera de posición. Esbozó que, posteriormente, recibió tratamiento médico y los beneficios de la CFSE, bajo la póliza obrero patronal expedida a favor de BMC.

A tenor con lo anterior, el señor Ríos Rivera le imputó a BMC responsabilidad por una presunta omisión en: (1) establecer políticas sobre normas de conducta en el lugar de empleo y proveer adiestramientos sobre el particular; (2) ser diligente en la contratación del señor Mulero; (3) tomar medidas para evitar la conducta violenta del señor Mulero y (4) adiestrar adecuadamente a sus supervisores para atender la conducta violenta del señor Mulero.

El 11 de enero de 2023, BMC presentó su *Contestación a Demanda*, en la cual negó las aseveraciones atinentes a la responsabilidad o el deber de responder por los actos criminales no

---

[1] El señor Ríos Rivera presentó cargos criminales contra el señor Mulero por los hechos alegados en la demanda, bajo el número de caso BY2022CR00461, en el cual el señor Mulero hizo alegación de culpabilidad por un cargo menor.

previsibles del señor Mulero. Sostuvo que su corporación tenía unas políticas claras sobre conducta, específicamente de cero tolerancias a actos de agresividad en el empleo, las cuales procuran la seguridad de todas las personas que allí laboran. Añadió que tomó las medidas apropiadas para evitar que la conducta violenta del señor Mulero causara daños a sus compañeros de trabajo. Ello, pues al momento de reclutamiento y durante su relación de empleo, las certificaciones de antecedentes penales del señor Mulero siempre reflejaban un resultado negativo, por cual BMC no podía prever su conducta criminal futura. Aseguró que no eran responsables por los hechos ocurridos, toda vez que el señor Mulero no actuó en el ejercicio de la autoridad conferida por el patrono, ni en protección de los intereses de BMC.

Luego de varios trámites procesales, el 19 de octubre de 2023, BMC presentó una *Solicitud de Sentencia Sumaria Parcial*, en la cual propuso cinco (5) hechos incontrovertidos, en aras de que se dictara sentencia sumaria a su favor, desestimando así la *Demanda* en su contra. En síntesis, expuso que es un patrono asegurado bajo la Ley Núm. 45 de 18 de abril de 1935, según enmendada, conocida como *Ley del Sistema de Compensaciones por Accidentes del Trabajo*, por lo cual le cobijaba la inmunidad patronal. En virtud de ello, alegó que procedía la desestimación de la demanda. Enfatizó que el foro primario debía determinar si se trataba de un "accidente de trabajo", y si aplicaba alguna de las excepciones a la doctrina de inmunidad patronal. Lo anterior, toda vez que surgía de los hechos relatados en la demanda que la agresión física que sufrió el señor Ríos Rivera en efecto fue un accidente de trabajo porque se relacionaba con actos o funciones inherentes de su empleo en el curso del trabajo y como consecuencia de éste.[2]

---

[2] Del Sistema Unificado de Manejo y Administración de Casos (SUMAC) surge que a la solicitud de sentencia sumaria se anejaron los siguientes documentos:

En reacción, el 26 de enero de 2024, el señor Ríos Rivera presentó su *Oposición Solicitud Sentencia Sumaria Parcial.* En esta, alegó que aplicaba la excepción de una reclamación de un empleado que sufra daños cuando la actuación patronal no está relacionada con la obligación del empleado de cumplir las responsabilidades y funciones inherentes de su trabajo. Lo anterior, pues la conducta negligente de BMC en la selección, retención y recontratación del señor Mulero no tenía relación alguna con las labores de plomero, posición por la cual fue contratado. Afirmó que era empleado de BMC al momento de los hechos, que fue agredido por otro empleado que el patrono mantuvo en su empleo a pesar de su comportamiento agresivo reiterado en el lugar de trabajo y que recibió tratamiento en la CFSE.[3]

Evaluadas las posturas de ambas partes, el 14 de marzo de 2024, el TPI emitió la *Sentencia Parcial* que hoy revisamos. En síntesis, concluyó que en casos donde ocurre una agresión, en el cual un empleado agrede a otro, la jurisprudencia ha resuelto que los patronos tienen inmunidad. Citando el caso resuelto por el Tribunal Supremo de Puerto Rico, *López Cotto v. Western Auto,* 171 DPR 185 (2007), determinó que el patrono no responde de los actos intencionales y de agresión cometidos por un empleado hacia otro. Así las cosas, concedió la *Solicitud de Sentencia Sumaria Parcial* presentada por BMC y en su consecuencia, desestimó, con perjuicio, la acción contra dicho hospital.

Inconforme con la determinación del foro primario, el señor Ríos Rivera acude ante nos mediante el recurso de epígrafe. Como parte de su comparecencia, señala que el foro de instancia cometió los siguientes errores:

---

Declaración Jurada de Marla Berríos; Certificación CFSE; Entrevista a Oscar Ríos Rivera 25-abr-2022; Carta a Edwin Mulero 1-nov-2022; Informe de Hallazgos; Carta Separación de Empleo y Póliza Actual CFSE.

[3] Del SUMAC no surge que a la oposición a la solicitud de sentencia sumaria se anejaron documentos.

Erró el Tribunal de Primera Instancia al dictar Sentencia Sumaria Parcial desestimando con perjuicio la acción contra Bayamón Medical Center sin que hubiese terminado el descubrimiento de prueba, por lo que no tenía elementos suficientes para determinar si la conducta de Bayamón Medical Center estaba protegida por la inmunidad patronal bajo la Ley 45-1935.

Erró el Tribunal de Primera Instancia al fundamentar su sentencia en una jurisprudencia que no aplica a los hechos de este caso por lo que debe distinguirse, además, la base teórica de dicha jurisprudencia ha evolucionado significativamente.

El 18 de abril de 2024, este Tribunal concedió mediante *Resolución*, 20 días a BMC para presentar su alegato. El 8 de mayo de 2024, este instó su escrito en oposición, por lo que, con el beneficio de la comparecencia de todas las partes, resolvemos.

**II.**

**A.**

La Regla 36 de Procedimiento Civil dispone el mecanismo extraordinario y discrecional de la sentencia sumaria. 32 LPRA, Ap. V, R. 36. El propósito principal de este mecanismo procesal es propiciar la solución justa, rápida y económica de litigios civiles que no presentan controversias genuinas de hechos materiales, por lo que puede prescindirse del juicio plenario. *Serrano Picón v. Multinational Life Ins*, 212 DPR 981 (2023).[4] Los tribunales pueden dictar sentencia sumaria respecto a una parte de una reclamación o sobre la totalidad de esta. 32 LPRA Ap. V, R. 36.1; *Meléndez González v. M. Cuebas*, 193 DPR 100 (2015). La sentencia sumaria procederá si las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, junto a cualquier declaración jurada que se presente, si alguna, demuestran que no hay controversia real y sustancial sobre algún hecho esencial y pertinente y que, como cuestión de derecho, procede

---

[4] Véase, además: *Oriental Bank v. Caballero García*, 212 DPR 671 (2023); *Ferrer et. al. v. PRTC*, 209 DPR 574, 580-581 (2022); *González Santiago v. Baxter Healthcare*, 202 DPR 281, 290 (2019); *Ramos Pérez v. Univisión*, 178 DPR 200, 213-214 (2010).

hacerlo. *González Meléndez v. Mun. San Juan et al.,* 212 DPR 601 (2023).

El promovente debe presentar una moción fundamentada en declaraciones juradas o en cualquier evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes sobre la totalidad o parte de la reclamación. 32 LPRA Ap. V, R. 36.1; *Universal Ins. y otro v. ELA y otros*, 211 DPR 455 (2023). La controversia sobre los hechos esenciales que genera el litigio tiene que ser real, no especulativa o abstracta. Es decir, tiene que ser de naturaleza tal que permita concluir que existe una controversia real y sustancial sobre hechos relevantes y pertinentes. *Ramos Pérez v. Univisión*, supra, págs. 213-214, seguido en *Meléndez González v. M. Cuebas*, supra, pág. 110.

Nuestro ordenamiento civil y su jurisprudencia interpretativa dispone que se deben cumplir unos requisitos de forma los cuales deben satisfacerse al momento de presentar una solicitud de sentencia sumaria. Estos requisitos son: (1) una exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos o en controversia; (3) la causa de acción sobre la cual se solicita la sentencia sumaria, (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del Tribunal; (5) las razones por las cuales se debe dictar sentencia, argumentando el derecho aplicable, y (6) el remedio que debe ser concedido. 32 LPRA Ap. V, R. 36.3; *Pérez Vargas v. Office Depot*, 203 DPR 687 (2019).

Por su parte, le corresponde a la parte promovida refutar dicha moción a través de declaraciones juradas u otra

documentación que apoye su posición. Esto es, la parte que se opone debe proveer evidencia sustancial de los hechos materiales que están en disputa. *León Torres v. Rivera Lebrón*, 204 DPR 20 (2020). El hecho de no oponerse a la solicitud de sentencia sumaria no implica necesariamente que ésta proceda si existe una controversia legítima sobre un hecho material. Sin embargo, el demandante no puede descansar en las aseveraciones generales de su demanda, "sino que, a tenor con la Regla 36.5, estará obligada a 'demostrar que [tiene] prueba para sustanciar sus alegaciones'". La Regla 36.5 de Procedimiento Civil, dispone que de no producirse por parte del opositor una exposición de hechos materiales bajo juramento, deberá dictarse sentencia sumaria en su contra. 32 LPRA Ap. V, R. 36.5; *Ramos Pérez v. Univisión*, supra, págs. 215-216.

La Regla 36.4 de Procedimiento Civil, establece que, si no se dicta sentencia sobre la totalidad del pleito, ni se concede todo el remedio solicitado o se deniega la moción de sentencia sumaria, y por tanto, es necesario celebrar juicio, será obligatorio que el Tribunal en su dictamen determine los hechos esenciales sobre los cuales no haya controversia sustancial y aquellos que sí se encuentran genuinamente en controversia. 32 LPRA Ap. V, R.36.4

Cónsono con lo anterior, nuestro estado de derecho le impone y exige al TPI, exponer los hechos materiales y esenciales que están en controversia, así como los que no lo están, independientemente de cómo resuelvan una solicitud de sentencia sumaria. *Meléndez González v. M. Cuebas*, supra, pág. 117. Al evaluar la solicitud de sentencia sumaria, el juzgador deberá: (1) analizar los documentos que acompañan la moción solicitando la sentencia sumaria, los incluidos con la moción en oposición y aquellos que obren en el expediente judicial y; (2) determinar si el oponente controvirtió algún hecho material o si hay alegaciones de

la demanda que no han sido controvertidas o refutadas en forma alguna por los documentos. *PFZ Props., Inc. v. Gen. Acc. Ins. Co.,* 136 DPR 881, 913-914 (1994).

Por último, en *Meléndez González v. M. Cuebas,* supra, el Tribunal Supremo de Puerto Rico estableció el estándar de revisión que debe utilizar este foro apelativo intermedio al revisar denegatorias o concesiones de mociones de sentencia sumaria. Conforme a ello, debemos utilizar los mismos criterios que los tribunales de primera instancia al determinar si procede dictar sumariamente una sentencia. En esta tarea sólo podemos considerar los documentos que se presentaron ante el foro de primera instancia y determinar si existe o no alguna controversia genuina de hechos pertinentes y esenciales, y si el derecho se aplicó de forma correcta. La tarea de adjudicar los hechos relevantes y esenciales en disputa le corresponde únicamente al foro de primera instancia en el ejercicio de su sana discreción. *Vera v. Dr. Bravo,* 161 DPR 308, 334 (2004). Finalmente, debemos revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el derecho a la controversia. *Meléndez González v. M. Cuebas,* supra, pág. 119.

**B.**

La *Ley del Sistema de Compensaciones por Accidentes del Trabajo,* Ley Núm. 45 de 18 de abril de 1935, según enmendada (Ley Núm. 45), 11 LPRA sec. 1 *et seq.,* es un estatuto de carácter remedial que pretende consagrar ciertas protecciones y beneficios al obrero que sufre un accidente, lesión o enfermedad en el curso de trabajo. *Lebrón Bonilla v. ELA,* 155 DPR 475, 481 (2001); *Cátala v. F.S.E.,* 148 DPR 94, 99 (1999). Con tal intención, dicha Ley instituye un sistema de seguro compulsorio y exclusivo para compensar a los trabajadores que sufran lesiones o enfermedades en el curso del empleo, brindándoles un remedio rápido, eficiente y libre de las complejidades de una reclamación ordinaria en daños. *Hernández*

*Morales et al. v. CFSE*, 183 DPR 232, 240 (2011). El referido seguro indemniza al obrero que se ha lesionado, incapacitado, enfermado o fallecido a causa de un accidente ocurrido en el trabajo. *Martínez v. Bristol Myers, Inc.*, 147 DPR 383 (1999); *Pacheco Pietri y otros v. ELA y otros*, 133 DPR 907, 914 (1993).

El Artículo 2 de la Ley Núm. 45, establece que están protegidos todos los obreros y empleados que trabajen por patronos asegurados, aquellos que cumplan con sus respectivas aportaciones patronales, que sufran lesiones, se inutilicen, o pierdan la vida por accidentes procedentes de un acto o función inherente a su trabajo o empleo, o que acontezcan en el curso o a causa de este, siendo acreedores a los remedios comprendidos en la misma. 11 LPRA sec. 2. Conforme esta Ley, para que un evento se pueda catalogar como un accidente de trabajo se deben cumplir los siguientes requisitos:

(1) provenir de cualquier acto o función del obrero;
(2) ser inherente al trabajo o empleo que desempeña el obrero;
(3) ocurrir en el curso del trabajo;
(4) ser consecuencia de éste.

Así, la protección brindada en el referido Art. 2 de la Ley Núm. 45 se extiende a las lesiones sufridas como consecuencia de accidentes que provengan de cualquier acto o función inherente al trabajo de un empleado u obrero, que ocurran en el curso de dicho trabajo o como consecuencia de éste. *Lebrón Bonilla v. ELA*, supra, pág. 484; *Ortiz Pérez v. F.S.E.*, 137 DPR 367, 372-373 (1994).[5]

Por ende, **para poder reclamar dentro del contexto de la Ley del Sistema de Compensaciones por Accidentes del Trabajo, se requiere la existencia de un nexo causal entre la lesión, enfermedad, o muerte del obrero y su trabajo**. Es decir, el accidente sufrido por el obrero carece de protección si este no cumple con uno de los citados requisitos, por lo que corresponde a

---

[5] Véase, además: *Odriozola v. S. Cosmetic Dist. Corp.*, 116 DPR 485, 501 (1985); *Admor., F.S.E. v. Comision Industrial*, 101 DPR 56, 58 (1973).

la parte que solicita la compensación demostrar que el suceso sufrido está cobijado bajo la mencionada Ley. *Lebrón Bonilla v. ELA,* supra, pág. 484, citando a *Ortiz Pérez v. F.S.E.,* supra, pág. 373. (Énfasis nuestro).

Nuestro Más Alto Foro, en *Guzmán y otros v. ELA,* 156 DPR 693, 731 (2002), estableció que "[l]a inmunidad patronal no es eximente cuando: (1) el daño sufrido por el obrero se debe a un acto intencional o discriminatorio del patrono; (2) cuando el patrono del obrero que sufre el accidente en el escenario del trabajo no está asegurado; o (3) el patrono demandado hubiera actuado en virtud de doble capacidad o personalidad. En tales casos, el patrono responderá civilmente ante los tribunales e indemnizará al empleado que haya sufrido el "accidente de trabajo"."

Asimismo, en *Ortiz Pérez v. F.S.E.,* supra, el Tribunal Supremo de Puerto Rico estableció que la referida Ley fue enmendada a los efectos de proveer beneficios de tan importante legislación social en aquellos casos en que un obrero sea agredido intencional e ilegalmente por un tercero, como muy bien podría ser un compañero de trabajo. Para ello, basta demostrar una relación causal entre el trabajo o la ocupación del obrero y su lesión, incapacidad o muerte.

Para lo anterior, constituyó las normas respecto a lesiones provenientes de compañeros de empleo. A estos efectos, estas normas son las siguientes: (1) **serán compensables las lesiones surgidas de una riña en la cual el empleado lesionado no fue el agresor y la pelea ocurrió por razón del trabajo**; (2) no serán compensables las lesiones del empleado agresor aun cuando la riña ocurra por razón del empleo; (3) de ordinario, serán compensables las lesiones de todo empleado lesionado cuando exista prueba conflictiva sobre el origen de la pelea, y (4) no serán compensables las lesiones cuando no haya prueba sobre el origen y el motivo de la pelea. (Énfasis nuestro).

**III.**

En la presente causa, por estar íntimamente relacionados, discutiremos los señalamientos de error en conjunto. En síntesis, el señor Ríos Rivera aduce que los hechos incontrovertidos que alegó BMC en su *Solicitud de Sentencia Sumaria Parcial* no van dirigidos a derrotar las alegaciones sobre la negligencia de estos en la contratación, adiestramiento y retención del señor Mulero que surgen de la demanda. Enfatiza que es necesario que el TPI aquilate la prueba que debe ser presentada sobre la conducta intencional del patrono al contratar a una persona que desde la entrevista de empleo mostró una conducta antisocial, y sobre el mal manejo del patrono, BMC, de mantener un ambiente de trabajo libre de una persona agresiva, antisocial, violenta e incapaz de tener control sobre sus acciones. Señala que BMC conocía desde que contrató al señor Mulero de la posibilidad de problemas de salud mental y que posteriormente, este último tuvo problemas de agresividad, violencia, siendo incapaz de controlar sus acciones. Por lo anterior, alega que BMC no puede gozar de la inmunidad patronal que provee la Ley Núm. 45.

Por su parte, BMC arguye que el señor Ríos Rivera se benefició de los servicios que provee la CFSE, bajo la póliza obrero patronal expedida a favor de estos, y que no se dan los criterios para que aplique alguna excepción a la inmunidad patronal por la cual están cobijados. Además, señala que el señor Ríos Rivera presentó reclamaciones nuevas que no fueron alegadas en el foro primario. Finalmente, asegura que el conocer o no conocer la conducta agresiva y violenta del señor Mulero, no revela que medió actuación intencional o negligente alguna por parte de BMC. Veamos.

En este caso, los hechos que dieron lugar a la controversia que hoy atendemos, versan sobre un accidente de trabajo que es compensable bajo la Ley Núm. 45, así como lo ha establecido

jurisprudencialmente el Tribunal Supremo de Puerto Rico y como lo determinó el TPI. Para ello, es necesario repasar la normativa aplicable a los hechos.

Recordemos que Nuestro Mas Alto Foro, en *Ortiz Pérez v. F.S.E.*, supra, a la pág. 375, citando a *Atiles, Admor, v. Com. Industrial y Sucn. Álvarez,* supra, a la pág. 23, estableció que "[p]oco importa que una lesión sea consecuencia de una agresión entre dos obreros del mismo patrono si, al momento de ocurrir, ambos estaban realizando la labor que el patrono les ha encomendado y la agresión surge con motivo de dicha labor." Además, según mencionamos anteriormente, y aplicable a estos hechos, se constituye una de las normas respecto a lesiones provenientes de compañeros de empleo. A tales efectos, reiteramos que es la primera norma la que aplica, la cual establece que **"serán compensables las lesiones surgidas de una riña en la cual el empleado lesionado no fue el agresor y la pelea ocurrió por razón del trabajo"**.

En el caso de autos, el señor Ríos Rivera se encontraba en su lugar de trabajo, realizando labores como personal de mantenimiento, cuando fue agredido por el señor Mulero, sin motivo, situación que le provocó lesiones corporales que fueron atendidas en su momento por la CFSE. Lo último, bajo la póliza obrero patronal expedida a favor de BMC. Ello, producto de una riña entre empleados que laboraban en BMC, mientras se encontraban en función de sus labores. Por lo tanto, los hechos que dieron lugar a la demanda en el caso de epígrafe sí están cobijados bajo la Ley Núm. 45, supra.

Aun si se le imputara negligencia a BMC por los hechos ocurridos, el Tribunal Supremo de Puerto Rico ha establecido que la conducta negligente incurrida por parte del patrono no constituye excepción a la inmunidad patronal. *Guzmán y otros v. ELA*, supra. Añádase a ello, que para que prospere una reclamación como la que

hoy atendemos, es necesario que se pruebe el elemento de intención para que se active la excepción a la protección de la inmunidad patronal de la Ley Núm. 45.

En este caso, el señor Ríos Rivera no logró rebatir con especificación, detalle y evidencia que existía controversia sobre los hechos materiales contenidos en la solicitud de sentencia sumaria presentada por BMC. La totalidad de la prueba en el expediente apoya la disposición sumaria de la *Demanda* de epígrafe a favor de BMC, pues respalda la inexistencia de controversia sobre los hechos materiales del caso y sustenta las conclusiones jurídicas del TPI. En particular, no existe duda acerca de que BMC está cobijado por la inmunidad patronal que provee la Ley Núm. 45, por tratarse de actos intencionales llevados a cabo por un compañero del empleado lesionado.

En consecuencia, luego de examinar las mociones sobre sentencia sumaria y la documentación anejada, así como la normativa imperante, concluimos que los errores señalados por el apelante no se cometieron y que no incidió, ni abusó de su discreción el TPI al conceder el remedio sumario de la desestimación solicitado por BMC. Por tanto, procede se confirme su dictamen.

**IV.**

Por los fundamentos que anteceden, se confirma la *Sentencia Parcial* impugnada.

Lo acordó y manda el Tribunal y lo certifica la Secretaria.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones